

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:JAM/JGH
F.# 2020R00001

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 2, 2022

<u>By ECF and Email</u>

The Honorable William F. Kuntz, II
United States District Court
Eastern District of New York
Brooklyn, New York 11201

        Re:    United States v. Daniel Jou
                <u>Docket No. 20-CR-513 (WFK)</u>

Dear Judge Kuntz:

      The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for September 8, 2022. On August 20, 2021, the defendant pled guilty to possession of a defaced firearm, in violation of Title 18, United States Code, Section 922(k). As described herein, and as calculated by the Department of Probation in the Pre-Sentence Investigation Report ("PSR"), the defendant's total offense level is 19, which provides for an advisory sentencing range per the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") of 30-37 months. <u>See</u> PSR at ¶¶ 19-30.

      For the reasons set forth in the PSR and herein, the government respectfully requests that the Court impose a sentence within the Guidelines range.

Offense Conduct

      The PSR accurately summarizes the offense conduct. <u>See</u> PSR at ¶¶ 4-18. As described in the PSR and herein, an investigation by agents from the Federal Bureau of Investigation ("FBI") and members of the Joint Terrorism Task Force ("JTTF") revealed that separately-charged defendant Joseph Miner posted violent racist and anti-Semitic content on his social media accounts, sent and received messages about his desire to obtain assault weapons and other firearms, and ultimately attempted to procure various firearms and peripherals, including the defaced firearms that led to his conviction.

During his communications with an undercover law enforcement agent (the "UC"), Miner mentioned that Jou was also interested in purchasing weapons. As described in the PSR and detailed in the complaint, 20-M-368, ECF Docket No. 1, Miner described Jou as a "neighbor/friend." On April 26, 2020, Jou participated in a meeting with Miner and the UC at a hotel in Queens, New York, during which Jou stated that he wanted to buy a M92 Beretta pistol, a Springfield handgun and Glock 19 handgun. When the UC asked Jou whether he wanted the Springfield firearm in the 9 millimeter or .40 caliber version, Jou responded that he wanted the 9 millimeter version but ultimately wanted to purchase both versions. Jou and Miner both expressed interest in purchasing an AR-15 style assault rifle ("AR-15"). The UC stated that they had two different models of assault rifles available for sale: a Colt M4 and a "Ghost AR with a suppressor" as well as 100 and 50 round magazines. A "ghost gun" refers to a firearm made by an individual using different gun parts and which has no serial numbers or other identifying markings, and a "suppressor" refers to a silencer. Jou stated that he was willing to spend $3,000 and that he was "looking for the—nice, something real nice." 20-M-368, ECF Docket No. 1. Jou also stated that he would add on to his list of firearms before the UC returned to complete the gun transaction.

As described in the complaint, on April 27, 2020, Jou contacted the UC via text message on an encrypted messaging application and asked to "go over the list" and expressed his interest in purchasing an "M92 elite LLT/w trigger job & Opt. Performance Bar," a "Springfield 1911 TRP" and Glock 19 and Glock 26 handguns. Jou also asked "What is the nicest AR available[?]" The UC responded, "So no promises but I should have a colt and a ghost but it seems like your buddy [referring to Miner] is claiming dibs on the ghost one. The colt is solid." Shortly thereafter, Jou wrote to the UC and stated "I looking for a light civilian tactical version." He then followed-up, "lightweight" and "on the higher end." The UC responded that he/she would check but that he/she would likely have such an option for Jou to purchase, and asked how much money Jou had "ready." Jou responded, "5k." On or about April 28, 2020, Jou texted the UC ".357 desert eagle L5," which is a reference to a Desert Eagle handgun with a 5 inch barrel.

On May 12, 2020, Miner and Jou met the UC and a second undercover officer at the same hotel in Queens to consummate the firearms purchase. Miner purchased an AR-15-style ghost gun with a silencer, a Mossberg 500 shotgun, and an M&P "Shield" model nine-millimeter semi-automatic pistol. Id. The serial numbers on the shotgun and the pistol were obliterated. Id. Jou purchased a fully automatic Colt M4 assault rifle, which was also equipped with a silencer, and a Glock 19 nine-millimeter semi-automatic pistol with an obliterated serial number. Miner and Jou also purchased ammunition and high-capacity magazines for their respective assault weapons. Both Miner and Jou were arrested immediately upon leaving the hotel room.

## The Guilty Plea Proceeding and Guidelines Calculation

On August 21, 2020, the defendant pled guilty to an information charging one count of possessing a defaced firearm, in violation of Title 18, United States Code, Section 922(k). The government's estimated guidelines calculation, which is the same as contained in the PSR, is set forth below:[1]

| | | |
|---|---|---:|
| Base Offense Level (§ 2K2.1(a)(5)) | | 18 |
| Plus: | Obliterated Serial Number (§ 2K2.1(b)(4)(B)) | +4 |
| Less: | Acceptance of Responsibility (§ 3E1.1(a)-(b)) | -3 |
| Total: | | <u>19</u> |

As the defendant falls within Criminal History Category I, this offense level carries an advisory sentencing range of 30-37 months' imprisonment.

## Sentencing Law

The standards governing sentencing are well-established. In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. <u>Id</u>. at 264; <u>see</u> <u>also</u> <u>United States v. Kimbrough</u>, 552 U.S. 85 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

However, that the Guidelines are non-binding does not render them irrelevant to the imposition of an appropriate sentence. In <u>Gall v. United States</u>, 552 U.S. 38, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. <u>Id.</u> at 596-97. The <u>Gall</u> Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." <u>Id.</u> (noting that

---

[1] In a written plea agreement with the government, the defendant stipulated to the government's estimated Guidelines calculation that calculated his Base Offense Level at 20, pursuant to § 2K2.1(a)(4)(B). However, the government agrees with Probation that the proper Base Offense Level is § 2K2.1(a)(5). Similarly, as the defendant only purchased two firearms, the enhancement under § 2K2.1(b)(1)(A) (offense involving three to seven firearms) is not applicable.

3

a "major departure should be supported by a more significant justification than a minor one"). When "rendering a sentence, the district court must make and place on the record an individualized assessment based on the particular facts of the case." United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). Ultimately, the court "must state in open court the particular reasons supporting its chosen sentence." Carter, 564 F.3d at 328 (quoting 18 U.S.C. § 3553(c)).

Argument

In this case, the Government respectfully submits that the Court should impose a Guidelines sentence because of, among other things, (1) the seriousness of the defendant's conduct, (2) the defendant's disregard for the law, and (3) the need for general deterrence. See 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C), (a)(6).

I. The Defendant's Conduct Warrants a Guidelines Sentence

The defendant purchased a fully automatic weapon equipped with a silencer, a semi-automatic pistol with an obliterated serial number, and a high-capacity magazine with ammunition. The defendant's communications with undercover officers make clear that he was well aware that the serial numbers had been removed and the purpose for doing so: to anonymize the weapon, its illicit source and its end user. The Second Circuit has held that crimes involving the mere possession of firearms are inherently dangerous. United States v. Dillard, 214 F.3d 88, 96 (2d Cir. 2000). In Dillard, the Second Circuit observed that:

> Firearms are instruments designed for the use of violent physical force, whether legal or illegal. Apart from use for target practice in sport, firearms have no functional utility other than to threaten or cause harm to persons, animals, or property… [F]irearms are conventionally regarded as essential equipment of criminals engaged in violent crime.

214 F.3d at 93. Dillard also recognized that silencers are "conventionally regarded as…equipment of criminals engaged in violent crime." Id. As such, the defendant's interest in purchasing a silencer reflected his desire to use the weapons without being detected. United States v. Dodge, 846 F. Supp. 181 (D. Conn 1994) (noting that a silencer is "inherently dangerous…for which no peaceful purpose can be seriously suggested, regardless of whether the weapons actually are used" and citing United States v. Ballantine, 4 F.3d 504, 507 (7th Cir. 1993) and United States v. Horodner, 993 F.2d 191, 193 (9th Cir. 1993)). Similarly, a firearm with an obliterated serial number serves no purpose other than "to mask the identity of [the] weapon." United States v. Sands, 948 F.3d 709, 712 (6th Cir. 2020).

Any argument that the defendant ostensibly sought these weapons solely for "self-defense" is belied by the number and nature of the weapons he purchased. While the government has no evidence suggesting the defendant was planning any sort of attack—and the government has no reason to believe that he was—the defendant's mere possession of these weapons and the charge of conviction are serious and deserving of a Guidelines sentence.

4

II.     The Need for Deterrence Is High

The defendant's offense conduct involved considerable planning and thus requires a sentence that acts as a strong general deterrent. See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("crimes [that] are more rational, cool, and calculated than sudden crimes of passion or opportunity…are prime candidates for general deterrence") (internal quotation omitted). As with all crimes involving premeditation, a significant sentence is necessary to deter others that might consider similar conduct. Yet the deterrence factor is even more acute in this context. Specifically, a substantial sentence in this case would send an appropriate and much-needed message to all persons harboring any notion that acquiring and using illegal weapons is not worth the risk. Strong punishment for the defendant's inexcusable conduct sends the appropriate message to others – attempting to pursue these types of weapons will be prosecuted aggressively, and those who violate the law in this manner will be convicted and punished accordingly. Recent events have demonstrated the enormous toll in loss of life that gun violence creates in communities across the country. The Sentencing Guidelines capture this understanding and send the appropriate message to the public.

III.    Nothing in the Defendant's Background Provides Significant Mitigation

The circumstances of the defendant's upbringing and history do not weigh in favor of a below-Guideline sentence. PSR ¶¶ 40-61; See United States v. Vera Ramos, 296 Fed. Appx. 201, 203 (2d Cir. 2008) (affirming guideline sentence despite defendant's "difficult upbringing" and noting district court's observation that such circumstances are "almost universal" among defendants). Indeed, the defendant's family structure, gainful employment and community support system prior to the offense conduct makes his behavior all the more inexcusable.

Conclusion

In this case, a Guidelines sentence of 30-37 months' imprisonment appropriately captures the defendant's egregious conduct, provides a powerful deterrent message and is sufficient, but not greater than necessary to carry out the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Artie McConnell
Josh Hafetz
Assistant U.S. Attorneys
Eastern District of New York
718-254-7000

cc:    Michael P. Padden, Esq. (by ECF and E-mail)
Jamie Turton, United States Probation Officer (by E-mail)