UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

          v.

DANIEL JOU,

          Defendant.
------------------------------------------------------------X

**ORDER**
20-CR-513 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 31, 2021, Daniel Jou ("Defendant") pleaded guilty to the sole count of an Information charging him with possession of a defaced firearm, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(b). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 30 months of incarceration, 2 years of supervised release with special conditions, and a $100.00 mandatory special assessment.

## BACKGROUND

On May 13, 2020, the Government filed a Complaint charging Defendant with Unlawful Possession of a Firearm in violation of 18 U.S.C. § 922(k).

On August 31, 2021, Defendant waived Indictment and pleaded guilty pursuant to a plea agreement to the sole count of an Information charging him with Possession of a Defaced Firearm in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). The Information also contains a criminal forfeiture allegation.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.   Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Family and Personal Background

Defendant was born Daniel Chun Jou on February 18, 1980, in Taiwan. Presentence Investigation Report ("PSR") ¶ 41, ECF No. 38. He is the only child of James and Chi Jou. *Id.* Defendant's father passed away in July 2019, and his mother, age 72, resides with Defendant and is employed as a real estate broker. *Id.* Defendant's mother is aware of Defendant's conviction and remains supportive of him. *Id.*

Defendant was raised primarily by his parents in a middle-income household, though finances were occasionally challenging. *Id.* ¶ 42. Defendant's parents worked full-time. Id. Defendant states he did not experience physical or mental abuse during his childhood and described a good childhood and close relationships with his parents. *Id.*

Defendant's mother describes him as a "quality young man," who is quiet and shy, with a loving heart. *Id.* ¶ 43. She notes Defendant spent a lot of time home alone during his childhood because of his parents' work schedules. *Id.*

Defendant is single, has never been married, and has no children. *Id.* ¶ 44.

Defendant moved to the United States in 1983 with his parents. *Id.* ¶ 45. Between ages three and six, Defendant and his family lived in Hawaii, California, and Taiwan. *Id.* In 1986, Defendant and his parents settled in Queens, New York. *Id.* He is a naturalized citizen. *Id.* With the exception of a one- or two-year period when he resided in Stony Brook, New York, Rockford, Illinois, and Menomonee Falls, Wisconsin for school, he has resided at the address of record since moving to New York. *Id.* His home is a two-family house in a middle-income neighborhood, and his mother resides on the first floor. *Id.*

2. Educational and Employment History

Defendant attended Francis Lewis High School in Queens, New York, but left high school during his junior year. *Id.* ¶ 54. He later obtained a GED on November 22, 1996. *Id.* Defendant then completed two years of college at Stony Brook University, in Stony Brook, New York, in the Arts and Sciences program from September 3, 1997 to December 22, 1999. *Id.* ¶ 53. From September 3, 2013 to May 8, 2014, Defendant attended Baptiste College of Ministry in Menomonee Falls, Wisconsin. *Id.* ¶ 52. However, he had poor scholastic standing and did not return after completing his freshman year. *Id.*

From 1999 to 2000, Defendant was employed as a real estate agent at Century 21 and briefly worked as a used car buyer. *Id.* ¶ 60. From 2000 to 2001, Defendant worked for a friend's computer company and at cafes throughout New York. *Id.* From 2001 to 2013, Defendant worked at his father's pest control business. *Id.* ¶ 59. In 2014, Defendant worked in telemarketing, various office jobs, and at a landfill. *Id.* ¶ 58. In 2015, for a period of six months, Defendant was employed by a friend's construction company. *Id.* From 2015 to 2020 Defendant worked at various pest control companies in New York. *Id.* ¶ 57. Since 2019, Defendant has been employed at his father's pest control business full-time. *Id.* ¶ 56. After his father's death in July 2019, Defendant became the owner and manager of the business, from which he earns a monthly salary of $500.00. *Id.*

Based on Defendant's financial profile, he appears unable to pay a fine. *Id.* ¶ 63.

3. Prior Convictions

Defendant has two prior criminal convictions. *Id.* ¶¶ 33-34. On February 9, 2001, Defendant was sentenced in Los Angeles County Court to three days of custody and three years of probation for Access Device Fraud. *Id.* ¶ 33. On June 16, 2006, Defendant was sentenced in Nassau County 1st District Court to conditional discharge and fines of $200.00 and $100.00 for Facilitating Aggravated Unlicensed Operation of a Motor Vehicle in the 2nd Degree and Disorderly Conduct: Creating a Hazardous or Physically Offensive Condition. *Id.* ¶ 34. During a search of his vehicle that gave rise to this offense, law enforcement authorities discovered a 16-inch steel dagger under the driver's seat of the vehicle. *Id.* Defendant admitted the dagger was his and stated he used it for protection. *Id.*

4. Medical and Mental Health

Defendant reported no prior or current health conditions, though his mother stated he had unspecified prior health problems. *Id.* ¶ 48.

Similarly, Defendant described no prior or current mental health conditions, but his mother stated he has some ongoing mental health issues stemming from the time he spent alone as a child. *Id.* ¶ 49.

### 5. Substance Abuse

Defendant reported no current alcohol or drug use but detailed some marijuana use during his teenage years. *Id.* ¶ 50. In 2014, for nine months, Defendant attended Reformer's Unanimous in Rockford, Illinois—a faith-based recovery program. *Id.* On August 26, 2022, the Court was notified Defendant had tested positive for the use of marijuana. ECF No. 41.

### 6. Nature and Circumstances of the Offense

In late 2019, law enforcement officials observed postings on co-Defendant Joseph Miner's social media accounts, electronic mail, and text messages about (1) his desire to obtain assault weapons and other firearms, and (2) violent racist and anti-Semitic content. PSR ¶ 4.

In April 2020, Miner was introduced to and began communicating with an undercover officer. *Id.* ¶ 10. In these communications, Miner expressed an interest in procuring firearms. *Id.* Miner told the undercover officer Defendant was also interested in purchasing several weapons. *Id.*

On April 26, 2020, Miner and Defendant met with the undercover officer in the lobby of a hotel in Queens, New York. *Id.* ¶ 11. During this recorded meeting, Miner stated he was interested in purchasing two firearms, and Defendant stated he was interested in purchasing three nine-millimeter semi-automatic pistols, namely, a Beretta M92FS, a Springfield 1911, and a Glock 19. *Id.* Both Miner and Defendant expressed interest in buying ammunition from the

undercover officer. *Id.* The parties discussed pricing and Miner and Defendant indicated they had thousands of dollars in cash on hand to purchase weapons that evening. *Id.* The undercover officer told Miner and Defendant he did not presently have the firearms and that a second meeting was necessary to finalize the purchase. *Id.* At various times in the conversation, the undercover officer told Miner and Defendant that, given the illegal nature of the transaction, the serial numbers on the weapons had been "cleaned off." *Id.* ¶ 12. Miner suggested further communications be conducted over an encrypted internet-based messaging platform, and Defendant gave the undercover officer his username. *Id.* At the conclusion of the meeting, both Miner and Defendant reiterated they were "eager" to buy, had the money, and were "ready today." *Id.*

On April 27, 2020, Defendant contacted the undercover officer via the encrypted platform and asked, "can we go over the list[?]" *Id.* ¶ 13. Defendant confirmed he wanted to purchase the firearms discussed at the previous meeting. *Id.* Defendant subsequently asked about several other handguns and asked the undercover officer, "[w]hat is the nicest AR available," referring to an AR-15 assault rifle. *Id.* The undercover officer informed Defendant the "serial" had been "cleaned off [the firearms] so no trace." *Id.*

On May 12, 2020, Miner and Defendant met the undercover officer and a second undercover officer at the same hotel in Queens to consummate the deal. *Id.* ¶ 14. Defendant purchased a fully automatic Colt M4 assault rifle, which was also equipped with a silencer, and a Glock 19 nine-millimeter semi-automatic pistol that had its serial number obliterated. *Id.* Miner and Defendant also purchased ammunition and high-capacity magazines for their respective assault weapons. *Id.*

Defendant was arrested without incident on May 12, 2020 by FBI/Joint Terrorism Task Force agents in Queens. *Id.* ¶ 15.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, which involved dangerous firearms. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his offense.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of possession of a defaced firearm in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). For this offense, Defendant faces a maximum term of imprisonment of five years. Although Defendant agreed in his plea agreement not to appeal or challenge a sentence greater than 63 months of imprisonment, *see* Agreement ¶ 6, ECF No. 36, the Court notes the statutory maximum term is 60 months of imprisonment.

Defendant also faces a maximum term of supervised release of three years pursuant to 18 U.S.C. § 3583(b)(2).

A term of not less than one nor more than five years of probation is also available, because the instance offense is a Class D Felony. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist that would make such a condition plainly unreasonable. 18 U.S.C. § 3563(a)(2).

Defendant also faces a maximum fine of $250,000.00 under 18 U.S.C. § 3571(b) and forfeiture of the seized firearm and ammunition in accordance with paragraph six of Defendant's plea agreement and the Order of Forfeiture entered by the Court on September 6, 2022. *See* 18 U.S.C. § 924(d)(1); 28 U.S.C. § 2461(c).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 922(k) offenses is USSG § 2K2.1. For Guidelines purposes, Defendant is accountable for possessing a Glock 19 nine-millimeter semi-automatic pistol with an obliterated serial number, as detailed in the count of conviction. He is also accountable for the fully automatic Colt M4 assault rifle, equipped with a silencer. The Colt M4 is considered Relevant Conduct under USSG § 1B1.3(a)(2). The offense involved a firearm described in 26 U.S.C. § 5845(a). Specifically, the fully automatic Colt M4 is a machine gun, as defined in 26 U.S.C. § 5845(b). Additionally, the Colt M4 was equipped with a silencer, which also qualifies as a firearm as described in 26 U.S.C. §5845(a). Therefore, the base offense level is 18, per USSG § 2K2.1(a)(5).

Because Defendant purchased a firearm with an obliterated serial number, a 4-level enhancement is warranted under USSG § 2K2.1(b)(4)(B).

Because Defendant has clearly demonstrated acceptance of responsibility for the offense, a 2-level decrease is warranted under USSG § 3E1.1(a).

Finally, because the Government states it was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level under USSG § 3E1.1(b).

Accordingly, Defendant's adjusted offense level is 19.

Defendant's prior convictions result in a criminal history score of zero. A criminal history score of zero establishes a criminal history category of I. For an offense level of 19 and a criminal history category of I, the Sentencing Guidelines suggest a term of 30 to 37 months of incarceration. *See* USSG Ch. 5, Pt. A.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply here.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For his purchase of firearms from the same undercover officer, Defendant Miner received a sentence of 57 months of custody and 3 years of supervised release. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor does not apply here.

## CONCLUSION

The Court finds that a sentence of 30 months of incarceration and 2 years of supervised release with special conditions is appropriate. The Court also imposes the $100.00 mandatory special assessment but does not impose a fine because Defendant does not have the ability to pay. This sentence is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 8, 2022
Brooklyn, New York